IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



MICHAEL HICKEY,

    Plaintiff,

v.                                            Civil Action No. 3:12cv691

BON SECOURS RICHMOND
HEALTH SYSTEM,

    Defendant.

**MEMORANDUM OPINION**

This matter is before the Court on DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT (Docket No. 3) pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons set forth herein, the motion will be denied.

**BACKGROUND**

For some time before December 2010, plaintiff Michael Hickey ("Hickey") was employed by defendant Bon Secours Richmond Health System ("Bon Secours") as a Physician Assistant. Before December 2010, Hickey typically worked three, twenty-four hour shifts per week, on Tuesday, Wednesday, and Thursday of each week. Hickey concurrently served as a Physician Assistant in the Virginia Army National Guard ("National Guard"). During most of this period, Hickey's position with the National Guard required him to spend at least one weekend per month performing

inactive duty for training ("IDT"), during which time he would be unavailable for work at Bon Secours.

Late in 2010, the National Guard increased the IDT training requirement to at least two weekends per month in response to an increase in operational tempo associated with preparations to send two National Guard battalions to Iraq. In early December 2010, Bon Secours also changed Hickey's schedule, announcing a schedule that would require him to work every third weekend.[1] The Complaint alleges that this new work schedule created a conflict with Hickey's National Guard IDT schedule, but does not state the first weekend when such conflict would occur.

On December 8, 2010, in response to the release of the new schedule, Hickey informed Bon Secours that he would not be able to work the weekend schedule because of the conflict with his IDT schedule. Hickey additionally notified Bon Secours that "he would seek other employment, and that he would provide Bon Secours with at least one month's prior notice of his actual resignation." (Compl. ¶ 10.)

On December 20, 2010, Hickey's employment with Bon Secours ended. Whether the ending of Hickey's employment was a termination or the acceptance of a resignation is hotly contested by the parties. Hickey claims that he was terminated

---

[1] There is no allegation that Bon Secours changed only Hickey's schedule, or that the schedule change in any way specifically targeted Hickey because of his military service.

because of the scheduling conflict with his National Guard IDT schedule, in violation of the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. §§ 4301 et seq. Bon Secours, however, claims that it merely accepted Hickey's resignation, and that therefore this action should be dismissed for failure to state a claim.

## DISCUSSION

### I. Standard Of Review

Fed. R. Civ. P. 12(b)(6) permits a party to move for dismissal of a claim if the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 8(a)(2) requires "a short and plain statement of the claim" showing that the pleader is entitled to relief. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

Courts should assume the veracity of all well-pleaded allegations in a Complaint, and should deny a motion to dismiss where those well-pleaded allegations state a plausible claim for relief. Id. at 679. A claim is "plausible" when the plaintiff pleads facts sufficient to allow the court to draw the reasonable inference that the defendant is liable for the

3

alleged misconduct. <u>Twombly</u>, 550 U.S. at 556. A court should grant a motion to dismiss, however, where the allegations are nothing more than legal conclusions, or where they permit a court to infer no more than a possibility of misconduct. <u>See Iqbal</u>, 556 U.S. at 678-79.

## II. Consideration Of Documents Extraneous To The Complaint

Before deciding the motion to dismiss, the Court must first determine whether it can review the documents that the parties have attached to their respective memoranda. (<u>See</u> Def.'s Mem. Exs. A-B, Docket Nos. 4-2 to -3; Pl.'s Opp. Ex. A., Docket No. 6-1) Courts generally may not consider materials outside of the complaint in ruling on a motion to dismiss without converting the motion to one for summary judgment. Fed. R. Civ. P. 12(d). This general rule notwithstanding, the Fourth Circuit has recognized several exceptions, noting that courts may consider "official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed." <u>Witthohn v. Fed. Ins. Co.</u>, 164 Fed. App'x 395, 396-97 (4th Cir. 2006) (citing <u>Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.</u>, 267 F.3d 30, 33 (1st Cir. 2001)).

As an initial matter, it is clear that the Court cannot consider the Affidavit of Hickey that is attached as Exhibit A

4

to Hickey's Memorandum in Opposition to Plaintiff's Motion to Dismiss. It requires no citation to authority to determine that this affidavit is clearly not a part of the pleadings and fits none of the recognized exceptions, and that, therefore, Fed. R. Civ. P. 12(d) prohibits its consideration.

A closer question arises in assessing whether the Court can consider the documents attached by Bon Secours to its Memorandum in Support of its Motion to Dismiss. Bon Secours offers two emails authored by Hickey that are purportedly contemporaneous summaries of two meetings that Hickey had with Bon Secours employees. It is clear that these emails are neither official public records nor documents referenced in the Complaint. Thus, the documents may only be considered if they are central to Hickey's claims. Instructive on this matter is the Second Circuit's discussion of what constitutes a document "central to plaintiff's claim" in Cortec Industries, Inc. v. Sum Holding L.P., 949 F.2d 42 (2nd Cir. 1991).

Cortec involved the purchase of "old Cortec Industries," ("old Cortec") which was held by the defendants, by "new Cortec Industries," the plaintiffs. Id. at 44. In their complaint, the plaintiffs contended that the defendants had made "repeated fraudulent or negligent misrepresentations and omissions concerning old Cortec's financial condition, operations and prospectus." Id. at 45 (internal quotation mark omitted).

5

While these claims relied upon several documents, including a Stock Purchase Agreement that contained certain representations and warranties concerning old Cortec's financial status that the plaintiff contended to have been false, the plaintiffs "neglected to attach these papers to, or incorporate them by reference in, the complaint." Id. at 44. When the defendants used those documents in support of their motion to dismiss, the plaintiffs argued that the court could not consider them, but must instead look solely within the four corners of the complaint. Id.

In discussing whether these documents could be considered without converting the motion into one for summary judgment, the Second Circuit noted that

> [T]he problem that arises when a court reviews statements extraneous to a complaint generally is the <u>lack of notice to the plaintiff that they may be so considered</u>; it is for that reason—requiring notice so that the party against whom the motion to dismiss is made may respond—that Rule 12(b)(6) motions are ordinarily converted into summary judgment motions. Where plaintiff has actual notice of all the information in the movant's papers <u>and has relied upon these documents in framing the complaint</u> the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.

Id. at 48 (emphasis added). The court went on to find that the district court, though it had chosen not to, could have considered the documents attached to the defendant's motion to

6

dismiss "because there was undisputed notice to plaintiffs of their contents <u>and</u> they were integral to plaintiffs' claim." <u>Id.</u> (emphasis added).

Turning to the emails presented by Bon Secours in this case, it simply cannot be said they are integral to Hickey's claims. While Hickey was undoubtedly aware of the emails' contents, there is no indication that he relied upon them in framing his Complaint, nor would he have had notice that the emails would be considered in deciding this motion. This case is unlike <u>Cortec</u>, where it was clear from the text of the complaint that the plaintiffs necessarily had relied on information in the Stock Purchase Agreement to support their claims that they had been deceived. The only cases cited by Bon Secours supporting the opposite conclusion are not applicable here because none of those cases involved a situation where the defendants relied on documents that were supposedly "integral to" a complaint but that could not reasonably be identified in the complaint as a document on which the plaintiff had relied in framing the complaint.[2] The Court therefore finds that it cannot

---

[2] <u>See, e.g.</u>, <u>Witthohn</u>, 164 Fed. App'x at 397 (considering state court records but declining to decide the "closer question" of whether a settlement agreement that was not filed in the state court hearing or referred to in the plaintiff's complaint could be reviewed); <u>Phillips v. LCI Int'l, Inc.</u>, 190 F.3d 609, 618 (4th Cir. 1999) (allowing consideration of a Dow Jones article that, while not attached to the complaint, "was integral to and explicitly relied on in the complaint"); <u>Manickavasagar v. Va.</u>

7

consider these emails without converting the motion into one for summary judgment.

### III. Conversion Of The Motion To Dismiss Into A Motion For Summary Judgment

Having determined that the Court cannot review the additional materials attached by the parties without converting the motion to dismiss into a motion for summary judgment, the Court must next determine whether it will so convert the motion. The Court will decline to do so, and will instead exclude the extrinsic evidence from its consideration of Bon Secours's motion to dismiss.

While Hickey argues that "[t]he defendants have converted their motion to dismiss into a motion for summary judgment," (Pl.'s Opp. 21, Docket No. 6) (emphasis added), the Fourth Circuit, as well as other circuit courts, has made clear that "conversion takes place at the discretion of the court, and at the time the court affirmatively decides not to exclude extraneous matters." Finley Lines Joint Protective Bd. Unit 200, Bhd. Ry. Carmen v. Norfolk S. Corp., 109 F.3d 993, 996 (4th Cir. 1997) (internal quotation marks omitted) (citing Aamot v. Kassel, 1 F.3d 441, 445 (6th Cir.1993); Manze v. State Farm Ins. Co., 817 F.2d 1062, 1066 (3rd Cir.1987); 9 Charles Alan Wright &

---

Commonwealth Univ. Sch. of Med., 667 F. Supp. 2d 635, 642 (E.D. Va. 2009) (considering exhibits attached to plaintiff's complaint).

Arthur R. Miller, Federal Practice & Procedure § 2363, at 259 (2d. ed. 1995)). The Fourth Circuit has further explained that:

> [T]he proper approach to Rule 12(b)(6) conversion is functional rather than mechanical. A motion to dismiss is not automatically transformed into a motion for summary judgment simply because matters outside the pleadings are filed with . . . the district court. If the district court chooses to ignore the supplementary materials and determines the motion under the Rule 12(b)(6) standard, no conversion occurs.

Id. (first alteration in original) (quoting Garita Hotel Ltd. P'ship v. Ponce Fed. Bank, 958 F.2d 15, 18-19 (1st Cir. 1992)).

Accordingly, the Court will consider only the Complaint and the memoranda submitted by the parties in ruling on the motion to dismiss, taking care not to consider either the attached exhibits or any arguments supported only by the excluded exhibits.

### IV. Consideration of Virginia Employment Commission Determinations

The Court must make one other determination before ruling on the merits of Bon Secours's motion to dismiss. In arguing that the motion to dismiss should be denied, Hickey cites to three determination made by the Virginia Employment Commission ("VEC") for the proposition that his actions did not constitute a resignation as a matter of Virginia law. (See Pl.'s Opp. 12-14, Docket No. 6.) Bon Secours, on the other hand, argues that

Virginia law prohibits the Court's consideration of VEC determinations in this case. Bon Secours is correct.

Determinative of this issue is Va. Code Ann. § 60.2-623(B), which states:

> Information furnished the Commission under the provisions of this chapter shall not be published or be open to public inspection, other than to public employees in the performance of their public duties. Neither such information, <u>nor any determination or decision</u> rendered under the provisions of § 60.2-619 [decisions by a VEC deputy], 60.2-620 [decision by an appeals tribunal] or 60.2-622 [decision by the VEC], shall be used in any judicial or administrative proceeding other than one arising out of the provisions of this title . . . .

Va. Code Ann. § 60.2-623(B) (emphasis added). While Hickey argues that the statute "seems to focus on 'information' provided by parties during a V.E.C. case and on preserving the confidentiality of that information," (Pl.'s Opp. 12 n.22, Docket No. 6), that interpretation is not supported by the plain language of the statute. Because this matter clearly does not arise out of the provisions of the Unemployment Compensation title of the Virginia Code, the Court will not consider arguments made by Hickey that are supported solely by VEC determinations.

**V. Motion To Dismiss**

Turning to the merits of Bon Secours's motion to dismiss, the sole question posed, as Bon Secours puts it, is whether Hickey resigned or was discharged. (Def.'s Reply 1, Docket No. 10.) Bon Secours argues that Hickey's Complaint itself alleges that he resigned, and that Hickey has therefore "ple[d] himself out of a claim." (Def.'s Reply 14, Docket No. 10.) The Court disagrees, and will therefore deny the motion to dismiss.

Bon Secours's argument boils down to a claim that paragraph 10 of the Complaint can be interpreted only as an admission that Hickey resigned his position with Bon Secours. (See Def.'s Mem. 2, Docket No. 4.) Paragraph 10 of the Complaint reads as follows:

> On December 8, 2012, [sic] the plaintiff informed his supervisor at Bon Secours that he would not be able work [sic] the weekend schedule because of military duty, that he would seek other employment, and that he would provide Bon Secours with at least one month's prior notice of his actual resignation.

(Compl. ¶ 10.)

Much of Bon Secours's argument is focused on the principle that "an acceptance of an employee's resignation prior to the intended last day does not convert a resignation into a termination." (Def.'s Mem. 13, Docket No. 4) (internal quotation mark omitted) (quoting Vasquez v. Potomac Hosp., Inc.,

11

1:10-cv-216, 2010 WL 3984685, at *5 (E.D. Va. Oct. 8, 2010)). While this is undoubtedly correct, a necessary predicate to this truism is that the employee actually resigned. Reviewing the Complaint in the light most favorable to Hickey, as the Court must, it cannot be said that the allegations of paragraph 10, as a matter of law, show that Hickey had resigned.

None of the cases cited by Bon Secours hold differently. For example, Bon Secours cites McDuffie v. Eli Lilly & Co. for the proposition that there is no discriminatory firing "even where plaintiff's resignation may have been the result of a misunderstanding between plaintiff and employer." (Def.'s Mem 13-14, Docket No. 4) (citing McDuffie, No. 04 Civ. 05995, 2009 WL 857069, at *7 (S.D.N.Y. Mar. 31, 2009)). That court, however, was considering a motion for summary judgment, and noted that the plaintiff's employer "understood him to have tendered his resignation" and that "Plaintiff ha[d] not proffered sufficient evidence to raise a question of fact as to pretext for prohibited discrimination." McDuffie, 2009 WL 857069, at *7. Hickey has made no allegation that Bon Secours "misunderstood" his statement as a resignation, and the Court cannot consider, in ruling on this motion, the type of evidence considered in McDuffie.

Bon Secours also cites to Aldridge v. Daikin America, Inc., which in turn cites Wright v. AmSouth Bancorporation, No. 05-cv-

0002, 2005 U.S. Dist. LEXIS 27389, at *9-10, which both rejected the proposition that an employee is terminated when the employee "believe[s] his employer 'made up their [sic] mind that they were going to fire [him].'" (internal quotation marks omitted) However, as the Aldridge court's summary of Wright shows, Wright cuts against Bon Secours' position.

> In Wright, the plaintiff employee was advised to look for employment elsewhere while still employed by the defendant employer. The employee believed his employer had "made up their [sic] mind that they were going to fire [him]." The court held that plaintiff's conclusions based on circumstantial evidence provided him with no evidence of neither a firm decision to fire him nor a communication of such a decision. The court ultimately used the date at which defendant communicated a decision to terminate to plaintiff as the date at which the plaintiff's time period in which to file any charges began.

Aldridge, 2005 U.S. Dist. LEXIS 27389, at *9-10 (alteration in original) (internal citations omitted) (citing Wright, 320 F.3d at 1203). Thus, the Wright court held that a communication from the employer suggesting that the employee seek other work was insufficient to constitute final notice of termination, notwithstanding that the employee subjectively concluded that the communication was a termination notice. Here, Hickey claims that he notified Bon Secours that he would be seeking other employment, but that he would notify them later of his actual

13

resignation. <u>Wright</u>, therefore, does not fit the facts of this case.

The other decisions cited by Bon Secours involved a fact pattern in which an employee unequivocally had resigned his or her employment, and then later tried to argue that he or she was actually terminated. See <u>Lisdahl v. Mayo Found.</u>, 633 F.3d 712, 717 (8th Cir. 2011) (employee admitted that "PTSD along with my bad knees have prevented me from working and forced me to resign"); <u>Curby v. Solutia, Inc.</u>, 351 F.3d 868, 870 (8th Cir. 2003) (employee submitted a "notice of termination" to her employer but later claimed she did not intend to resign); <u>Bourque v. Powell Elect. Mfg. Co.</u>, 617 F.2d 61, 64 n.4 (5th Cir. 1980) (employee gave two weeks' notice of intent to resign); <u>Vasquez</u>, 2010 WL 3984685, at *2 ("Plaintiff submitted a resignation letter on May 19, 2007 that designated June 4, 2007 as his last day."); <u>Bodkin v. Town of Strasburg</u>, No. 5:08-cv-83, 2009 WL 2921291, at *2 (W.D. Va. Sept. 11, 2009) (employee committed misconduct and resigned after being offered opportunity to do so by employer before the employer terminated him for cause); <u>Aldridge</u>, 2005 U.S. Dist. LEXIS 27389, at *1-2 (employee stated "I quit!," submitted a written resignation via email, and began employment elsewhere one week later); <u>Ludwick v. Premier Bank N., Inc.</u>, 935 F. Supp. 801, 805 n.1 (W.D. Va. 1996) ("At his deposition, Ludwick clearly stated that he

tendered his resignation and that his last day of work was July 11, 1995."). Those decisions do not apply to the allegations in the Complaint here.

Therefore, the Complaint filed by Hickey sufficiently alleges that he did not resign, but was, instead, terminated.

## CONCLUSION

For the foregoing reasons, DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT (Docket No. 3) will be denied.

It is so ORDERED.

                                                /s/ REP
                                  Robert E. Payne
                                  Senior United States District Judge

Richmond, Virginia
Date: December 19, 2012